William T. HAMLIN, Appellant,

v.

E. C. WARREN, Sheriff, Halifax County, Appellee.

No. 79–6769.

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1981.

Decided Nov. 3, 1981.

Certiorari Denied Jan. 18, 1982.

See 102 S.Ct. 1261.

Frank Laney, Third Year Law Student (Barry Nakell, University of North Carolina School of Law, Chapel Hill, N. C., on brief), for appellant.

Gilbert W. Chichester, Littleton, N. C. (Chichester & Harris, P. A., Littleton, N. C., on brief), for appellee.

Before WINTER, Chief Judge, HAYNS-WORTH, Senior Circuit Judge, and PHILLIPS, Circuit Judge.

---

HAYNSWORTH, Senior Circuit Judge:

The question is whether a state prisoner may challenge the validity of his conviction in a district court without having exhausted available state remedies upon the expedient of confining himself to a § 1983 claim for monetary damages, a declaratory judgment, and prospective injunctive relief, with a seemingly deliberate omission of a request for immediate release from his imprisonment. The question is a difficult one, never addressed by the Supreme Court, though the Supreme Court has decided a closely related question involving a § 1983 damage claim growing out of challenged administrative actions affecting the length of sentence service. In the context in which the question arises in this case, we think the Supreme Court would hold that the explicit exhaustion of state remedies requirement of 28 U.S.C.A. § 2254(b) is applicable.

## I.

In 1979, Hamlin was convicted in a North Carolina state court of conspiracy to commit armed robbery of a state liquor store. In an unpublished decision, the North Carolina Court of Appeals found no error in his trial and conviction. *See State v. Hamlin*, 46 N.C.App. 607, 275 S.E.2d 570 (1980). There is no indication of any further application to the Supreme Court of North Carolina, and the basis of his attack upon his conviction in this case could not have been presented during the appellate process, for it is concerned with matters outside the record.

In September 1979, only a few months after his conviction and while the appeal to the North Carolina Court of Appeals was pending, Hamlin filed this action in the United States District Court for the Eastern District of North Carolina. He alleged that the defendant sheriff had conspired with others to arrest him and to procure his conviction on the basis of perjured testimony. On the basis of 42 U.S.C.A. § 1983 he sought a declaratory judgment that his conviction was in violation of the Constitution of the United States, compensatory and punitive damages, the removal of the sheriff from his office, and prospective injunctive relief for the procurement of materials he thought relevant to his federal law suit.

The district court dismissed the complaint without requiring an answer. It noted that the complaint's attack was upon the conviction, "the very fact of his imprisonment," and that habeas corpus relief would be more appropriate. Nevertheless, it construed the complaint to state a claim for malicious prosecution, a claim the court rejected because the prosecution had not been unsuccessful.

There was some justification for the district court's construction of the pleading as one for habeas relief. There was no stated request for immediate release, but the pleading clearly disclosed a purpose to establish every predicate for it in a federal forum before assertion of any such claim in North Carolina's courts. If his action is allowed to proceed in the district court, resulting in a declaration that his conviction is constitutionally invalid and an award of damages, he would be in a position to assert the judgment as conclusive in any subsequent state habeas proceeding. In a subsequent state habeas proceeding it would be unlikely that relief would be denied; if it was, ultimate victory would still have been assured upon a return to the district court.

A federal court has the inherent power to fashion appropriate relief. It is not constrained by the pleader's request for relief. The question, then, is whether the pleader's deliberate failure to request his immediate release deprived the district court of the power to treat the action as one controlled by 28 U.S.C.A. § 2254, as it did, when the plaintiff himself was flying the banner of 42 U.S.C.A. § 1983.

## II.

In *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), there is a dictum to the effect that a § 1983 damage claim might be asserted in a federal court, without exhaustion of state administrative and judicial remedies, by a plaintiff seeking relief from an administrative revocation of

good time credits. *Id.* at 495, 93 S.Ct. at 1839. The plaintiffs in *Preiser* sought no such damages. They sought an injunction restoring their good time credits, relief which the Supreme Court held was subject to the exhaustion of state remedies requirement of § 2254(b). The plaintiffs contended, however, that if their claim was made subject to the exhaustion requirement, a damages claim in the federal court under § 1983 might be forever lost by the preclusive effect of an adverse judgment in the state court system. The Supreme Court answered by saying that a claim for damages was different, that one asserting such a claim was not seeking immediate or earlier release, and that a writ of habeas corpus was both an inappropriate and unavailable remedy. Thus, it concluded, such a claim could proceed.

In the context of *Preiser*, the statement was thoroughly justified. The plaintiffs were near the end of their period of sentence service and would have been entitled to immediate release if their good time credits had been restored. There was no practical possibility of a subsequent state court habeas corpus hearing, and no reason for the Supreme Court to have been concerned with the possible preclusive effect of a federal award of damages upon a subsequent state habeas claim. Here, that problem is clearly presented. More particularly, unlike the *Preiser* dictum, habeas relief would clearly be an available and appropriate remedy if the pleading had only included an allegation of exhaustion of available state court remedies. The substantive claim, if established, would inevitably establish the plaintiff's right to immediate release from confinement.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court applied the *Preiser* dictum. The Supreme Court, in a class action in which prisoners sought both the restoration of revoked good time credits and an award of damages, held that injunctive relief was foreclosed by *Preiser* but that the damages claim could go forward while the prisoners sought habeas relief in the state court. Thus the *Preiser* dictum became *Wolff*'s holding.

Faithful to the Supreme Court's lead, in *Pope v. Chew*, 521 F.2d 400 (4th Cir. 1975), we held that a prisoner whose pardon had been revoked upon the recommendation of a parole and probation board was entitled to a declaratory judgment that the revocation was invalid since the board had held no hearing. *Wolff* had held that a declaratory judgment was an appropriate predicate to an award of damages, and we held such relief was available to Pope, notwithstanding the defendant's immunity from an award of damages.

These cases involved attacks upon administrative actions affecting the fact or duration of sentence service. No attack upon the validity of a judgment of conviction was involved. Prison officials and parole board members may wish that their decisions not be subjected to judicial review, but if judicial review is to be had, there is no apparent reason to suppose that such officials would have a strong preference for review by state rather than federal courts. At least, there is no such unbecomingness as that which inheres in lower federal court review of state judicial decisions.

Attacks upon state judgments of conviction are quite different. State judges and justices who readily accept review by superiors within the system and by the United States Supreme Court strongly resent review by a single United States District Judge and by a United States Court of Appeals. The public at large has no perception of the consequences of litigation over good time credits, but may be acutely aware of federal interference with state judgments of conviction. All of the reasons underlying the rule of comity are present in this case while none are present, or at least not highly visible, in controversies over good time credits.

Considerations of comity produced the rule of exhaustion of state remedies in state prisoner habeas cases, later codified in § 2254(b). In 1948, when the requirement was codified, the attention of Congress was undoubtedly focused upon post-conviction

attacks upon convictions and not upon post conviction attacks upon some administrative decision. As *Preiser* clearly stated, codification of the exhaustion requirement in § 2254 amended § 1983 to the extent that it is applicable. The general intention of the Reconstruction Congress is irrelevant if the requirement is applicable, and, in making a determination whether or not it is applicable, consideration of practical consequences is appropriate.

We mentioned this problem in *Rimmer v. Fayetteville Police Dept.*, 567 F.2d 273 (4th Cir. 1977). There were references to *Preiser* and *Wolff* and to subsequent cases in the First and Fifth Circuits. Instead of deciding the question there, however, we rested our decision upon an alternative ground. Clearly, however, we considered the question an open one in the context of this case.

Subsequent cases in the courts of appeals have held the exhaustion requirement applicable to a civil rights claim in which the validity of the state court conviction was called into question, notwithstanding the absence of any request for release. *See, e. g., Watson v. Briscoe*, 554 F.2d 650 (5th Cir. 1977); *Meadows v. Evans*, 529 F.2d 385 (5th Cir. 1976), *aff'd en banc*, 550 F.2d 345 (5th Cir. 1977), *cert. denied*, 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457 (1977); *Fulford v. Klein*, 529 F.2d 377 (5th Cir. 1976), *aff'd en banc*, 550 F.2d 342 (5th Cir. 1977); *Mastracchio v. Ricci*, 498 F.2d 1257 (1st Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975); *Guerro v. Mulhearn*, 498 F.2d 1249 (1st Cir. 1974). Indeed, to hold otherwise would be to substantially undermine the exhaustion of remedies requirement, for anyone who could state a viable civil rights claim could subvert it by postponing a claim for release until his substantive rights had been adjudicated in a federal forum. Avoidance of that kind of subversion was very much in the minds of the justices when *Preiser* was decided, as Mr. Justice Brennan explicitly stated.

*Preiser, supra*, 411 U.S. at 503–04, 93 S.Ct. 1843–44 (Brennan, J., dissenting).

Holding the exhaustion of state remedies requirement applicable opens the possibility that a later civil rights claim in a federal court will be foreclosed, upon principles of collateral estoppel, by an adverse state court judgment. Principles of collateral estoppel, however, have only limited applicability to the adjudication of habeas claims under § 2254. If, after exhaustion of state remedies, there should be a final determination that the plaintiff was entitled to federal habeas relief, there is no reason to believe that the federal judgment would not also relieve him of the collateral estoppel effect of the state judgment with respect to an ancillary civil rights claim. When applicable, the doctrine precludes relitigation; however, if relitigation of the substantive issues is not precluded, the doctrine does not prevent a grant of any appropriate remedy.

Finally, if there is concern about the running of any applicable statute of limitations, a federal court should permit the filing of a civil rights claim calling into question the validity of a state court conviction while holding it in abeyance pending the exhaustion of state court remedies.

## III.

■ Since this complaint directly called into question the validity of the state court conviction, since habeas corpus relief would be available and appropriate, notwithstanding plaintiff's failure to request it, if only he had exhausted available state remedies, and since the complaint has all the earmarks of a deliberate attempt to subvert the requirement of § 2254(b),* we conclude that it may not proceed without compliance with the exhaustion requirement.

AFFIRMED.

---

* The complaint was prepared by an apparently artful "jailhouse lawyer," not by counsel appointed by this court to represent him.
We should not be understood as suggesting that motive would be relevant in a particular case. It is of moment that, if the pleading controlled the result, the artful pleader could easily subvert the exhaustion of remedies requirement of § 2254(b).

WINTER, Chief Judge, dissenting:

The question before us is not one which the Supreme Court has squarely answered. Thus we must make an informed prediction of what the Supreme Court would decide. Where I differ from the majority is that, in making the prediction, I think that we should adhere strictly to what the Supreme Court has said in other contexts. On the guidance from the Supreme Court which is presently available, I think that Hamlin is entitled to a plenary hearing. I therefore respectfully dissent.

## I.

Before proceeding with my main thesis, I am constrained to comment on the majority's treatment of the facts. In its statement of the question presented, the majority refers to Hamlin's "expedient" of seeking damages under § 1983, and his "seemingly deliberate omission" of a request for immediate relief. Several paragraphs later it is asserted that Hamlin's *pro se* pleading "clearly disclosed" a purpose to establish every ground for his release before asserting any claim in North Carolina's courts, and immediately thereafter, the majority flatly characterizes Hamlin's "seemingly deliberate omission" to request his release as a "deliberate failure" to seek that relief. Still later in the closing paragraph of the opinion, the majority softens its assertions by stating that Hamlin's complaint has "all of the earmarks of a deliberate attempt to subvert" the requirement of exhaustion. Despite these characterizations, the majority asserts that motive is not relevant in a particular case.

There is no doubt that Hamlin sought damages for an alleged denial of constitutional right which, if established, would also entitle him to release, and that he did not pray his release. But I read the pleadings in vain to show any indication that Hamlin did so with or without bad faith. The district court decided that case on the pleadings; Hamlin was never interrogated as to his motives. The issue before us is difficult enough, and I would prefer to deal with it without speculation as to what went through Hamlin's mind when he brought his lawsuit.

## II.

I turn then to what is before us. The significant question in this appeal is whether Hamlin must first exhaust his state remedies before the district court can entertain his claims pursuant to § 1983, a question previously discussed but not decided by us in *Rimmer v. Fayetteville Police Department*, 567 F.2d 273 (4th Cir. 1977).

As the Supreme Court has had occasion to say, ordinarily "[i]t is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). The question arises here because the constitutional issues raised by Hamlin suggest that his imprisonment is illegal; and in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Court held that "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." 411 U.S. at 490, 93 S.Ct. at 1836. Federal habeas corpus requires exhaustion of state remedies. 28 U.S.C. § 2254(b) (1976).

The plaintiffs in *Preiser v. Rodriguez*, however, sought federal injunctive relief directing the restoration of good-time prison credits that would have resulted in their release. In response to their argument that the habeas corpus exhaustion requirement could foreclose their claims for damages by operation of res judicata, the Court noted that an action for damages under § 1983 ordinarily does not require exhaustion of state remedies, observing:

If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the tradi-

tional purpose of habeas corpus. In the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy. Accordingly, . . . a damage action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies.

411 U.S. at 494, 93 S.Ct. at 1838 (emphasis in original).

Unlike the majority, I cannot read this language in *Preiser* as dependent upon the fact that plaintiffs there had nearly served their sentences so that there was no practical possibility of a subsequent state habeas corpus hearing. *Preiser* itself recognizes that exhaustion is required when a prisoner seeking his release is serving a relatively short sentence and it suggests that, if the time factor makes an otherwise adequate state remedy inadequate, a federal court might proceed without requiring exhaustion under the language of 28 U.S.C. § 2254(b). In short, *Preiser* itself belies the explanation advanced by the majority for asserting that the language therein was not intended to mean what it says.

In this case, Hamlin has clearly brought an action for damages, seeking both compensatory and punitive damages in his prayers for relief. He also seeks a declaratory judgment "that the defendant's acts and practices herein described and complained of violated plaintiff's rights under the United States Constitution." Finally, he requests injunctive relief suspending the sheriff from his duties, requiring the district attorney to provide him with the names and addresses of the grand jurors who charged him, and requiring his trial attorney to provide him with the trial transcript and his "certiorari petition" to the North Carolina Court of Appeals. On its face, Hamlin's complaint does not directly attack the fact or length of his confinement nor does it seek his release therefrom. *Preiser's* rule of exhaustion is therefore inapplicable.

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court confirmed this view of the applicability of *Preiser v. Rodriguez.* In *Wolff* state prisoners brought an action seeking both the restoration of good-time credits and damages for their deprivation. The Court noted that the restoration of credits was properly foreclosed by *Preiser v. Rodriguez,* saying:

> But the complaint also sought damages; and *Preiser* expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings. [Citation omitted] Respondent's damages claim was therefore properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant and serious misconduct. Such a declaratory judgment as a predicate to a damages award would not be barred by *Preiser;* and because under that case, only an injunction restoring good time properly taken is foreclosed, neither would it preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations.

418 U.S. at 554–55, 94 S.Ct. at 2974. *Wolff,* as I read it, thus approves a procedure closely similar to that followed by plaintiff in this case. His prayer for a declaratory judgment that his constitutional rights were violated by the sheriff represents a necessary "predicate to a damages award." In addition, the injunctive relief he seeks with respect to suspension of the sheriff is prospective; the remainder of the relief is merely for the purpose of assisting plaintiff in pursuing his legal remedies. I would conclude that under *Wolff* Hamlin should be able to proceed with his § 1983 complaint in the district court despite non-exhaustion.[1]

---

1. See also *Pope v. Chew,* 521 F.2d 400 (4th Cir. 1975), where we held that the plaintiff could obtain declaratory relief on his § 1983 claim

that his pardon was revoked without due process of law because he was seeking actual release from confinement in the state courts.

The majority seeks to avoid the language of *Wolff* on the ground that in *Wolff* relief was sought from prison authorities because of allegedly unconstitutional administrative actions and there was no attack upon the validity of a judgment of conviction calling into question the propriety of actions by state judges and justices. The majority asserts that the concept of comity, the foundation of the statutory requirement of exhaustion, is thus inapplicable or less forceful when something other than the correctness of state judicial actions is at stake. In expressing these views, the majority is in direct conflict with *Preiser* which considered and rejected this idea. There the argument was made that "the whole purpose of the exhaustion requirement . . . is to give state *courts* the first chance at remedying *their own* mistakes . . . [and exhaustion] does not apply when the challenge is not to the action of a state court, but . . . to the action of a state administrative body." (emphasis in original) 411 U.S. at 490–91, 93 S.Ct. at 1837. The argument was rejected:

> We cannot agree. The respondents . . . view the reasons for the exhaustion requirement of § 2254(b) far too narrowly. The rule of exhaustion in federal habeas corpus actions is rooted in considerations of federal-state comity . . . and it has as much relevance in areas of particular state administrative concern as it does where state judicial action is being attached . . .

411 U.S. at 491, 93 S.Ct. at 1837. The Court then went on to say that "[i]t is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." 411 U.S. 491–92, 93 S.Ct. at 1837. The impact and force of the language in *Wolff* may not be so easily avoided.

## III.

I of course recognize that other courts which have considered this question have required state prisoners to exhaust their state remedies where their claims for damages under § 1983 are predicated on the invalidity of their convictions. *Fulford v. Klein*, 529 F.2d 377, 381 (5th Cir. 1976), *aff'd in banc*, 550 F.2d 342 (5th Cir. 1977); *Guerro v. Mulhearn*, 498 F.2d 1249, 1251–54 (1st Cir. 1974); *Mastracchio v. Ricci*, 498 F.2d 1257 (1st Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975); *see also Esper v. Whitacre*, 615 F.2d 1359 (6th Cir. 1980) (unpublished) (citing *Fulford* and *Guerro*), *following Smartt v. Avery*, 411 F.2d 408, 409 (6th Cir. 1969).[2]

I find, however, the clear expressions of the Supreme Court in *Preiser* and *Wolff* more persuasive. If claims for damages under § 1983 are barred pending exhaustion of state remedies, adverse adjudication of those claims in state proceedings would subsequently operate as collateral estoppel upon the federal civil rights claims, *Allen v. McCurry*, 647 F.2d 167, and thus vitiate the congressional purpose in enacting the statute. The Congress of the Reconstruction era explicitly recognized that alternative state remedies were available, but it also determined that those remedies were insufficiently effective in protecting civil rights under the Constitution. *See* generally *Monroe v. Pape*, 365 U.S. at 173–83, 81 S.Ct. at 476–82. The Court in *McCurry* reemphasized the important distinctions between federal habeas corpus and § 1983. Habeas

---

Citing *Wolff*, we noted that "a federal court has inherent power to grant appropriate relief, and a declaratory judgment is always appropriate as a predicate to an award of damages." 521 F.2d at 406 n.8. Similarly, in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the plaintiffs sought an order directing the state to hold a judicial hearing to test the probable cause for their detention; the Court noted that "[b]ecause release was neither asked nor ordered, the lawsuit did not come within the class of cases for which habeas corpus is the exclusive remedy." 420 U.S. at 107 n.6, 95 S.Ct. at 859 n.6.

2. *Cf. Meadows v. Evans*, 529 F.2d 385, 386 (5th Cir. 1976), *aff'd in banc*, 550 F.2d 345, *cert. denied*, 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457 (1977). Under the Fifth Circuit view, to the extent claims for damages are unrelated to the validity of the prisoner's conviction, the § 1983 action is permitted to proceed.

corpus is derived from criminal proceedings, so that the exhaustion requirement and limited availability of collateral estoppel represent integral parts of the statutory and constitutional scheme. Actions brought under the Reconstruction Civil Rights Acts, in contrast, are independent civil proceedings provided by Congress for the redress of violations of constitutional rights. Just as the application of collateral estoppel to these proceedings is appropriate, the application of an exhaustion requirement is inappropriate. *See* 66 L.Ed.2d at 316–20. So long as an action brought under § 1983 does not run afoul of the proscription in *Preiser v. Rodriguez*, I think that it should be allowed to proceed in the federal forum Congress provided therefor.

I would reverse the judgment of the district court and remand the case for further proceedings.