Joseph Mario TARANTINO, Plaintiff,

v.

STATE OF NORTH CAROLINA; B.R. Baker, Jr., Detective, Avery County Sheriff's Department; and James T. Rusher, District Attorney for Avery County, North Carolina, individually and in their official capacities, Defendants.

Civ. A. No. A–C–86–99.

United States District Court,
W.D. North Carolina,
Asheville Division.

July 9, 1986.

Loflin & Loflin by Thomas F. Loflin, III, Dean A. Shangler, Beskind & Rudolf by David S. Rudolf, Durham, N.C., for plaintiff.

Jacob L. Safron, Sp. Deputy Atty. Gen., N.C. Dept. of Justice, Raleigh, N.C., for State of N.C. and Rusher.

Hemphill & Gavenus by Kathryn G. Hemphill, Newland, N.C., Womble, Carlyle, Sandridge & Rice by Allan R. Gitter, Winston-Salem, N.C., for B.R. Baker, Jr.

## MEMORANDUM OF OPINION

SENTELLE, District Judge.

THIS CASE is currently before the Court for disposition of motions to dismiss or, alternatively, for summary judgment on behalf of all defendants, the State of North Carolina; James T. Rusher, District Attorney; and Detective B.R. Baker, Jr., Avery County Sheriff's Department, Rusher and Baker being sued in both individual and official capacities.

### I

While not an old case in calendar terms, this controversy has quickly established a complex history. The relevant facts were first before the Court in the criminal case *United States of America v. Joseph Mario Tarantino*, A–CR–85–110, heard by the undersigned December 30, 1985, on defendant's motion to suppress evidence resulting from a search conducted by Detective Baker August 30, 1985. An understanding of the facts developed at that hearing is helpful to disposition of the motions now before the Court in this civil matter in which the criminal defendant is now the civil plaintiff.

Baker himself was the only witness offered by the government in support of the admissibility of the evidence. He testified that he had received an anonymous telephone call[1] describing a particular building that was being used for the growing of marijuana. The caller further advised that if he went there a person might be there and that, if not, the marijuana could be seen growing inside the building through cracks in the back wall of the building. He went to the premises because:

> Well, I had received a call that there was a crime being committed in the building. I went to the building to see if anyone was there and talk to them about it. See if there was anything that I could see in plain view there at the building.

The building (with which he was familiar) was one previously used as a store, set back in the edge of woods. Baker (accompanied by Sheriff Phillips) went to the front door which opened into the bottom floor of the building and found it padlocked from the outside. The windows on the two floors at the front of the building were sufficiently boarded up that he could not tell whether or not there were lights on inside, and he recalled no cars being around the building. When he found the front door padlocked, he went around to the back of the building and knocked on the door.[2] Due to the lay of the land and the construction of the building, the back door opens on to a second story and not the same floor as the front. Some of the boarded-up windows described by the officer at the front of the building opened into the second story accessible through the back door.

To reach the back door (there are in fact two doors at the rear on either side of a chimney), Officer Baker had to ascend to an enclosed porch. The enclosed porch had neither door nor gate at the end from which Baker gained entry but was enclosed

---

1. While there is no testimony that the call was literally anonymous, Baker never identified or described the caller in any fashion.

2. There is no testimony or other evidence that he knocked or otherwise attempted to determine whether anyone was present while examining the padlocked front door.

along the end of the building and down the other end of the porch. All doors and windows were boarded up and partially covered by tar paper. A knock on one of the doors brought no response. However, Baker's examination revealed that one or more cracks approximately 3½ feet from the floor were not entirely covered by tar paper. By bending down, putting his eye close to the cracks, holding his flashlight above his head, and peeping in through cracks less than one-quarter of an inch in width, he was able to see growing marijuana plants inside. Armed with this information and the anonymous telephone call, he obtained a warrant from a state magistrate, went back to the premises, entered the second floor by prying loose the boards from one of the boarded-up doors and seized the marijuana and paraphernalia connected with marijuana growing, which constituted the evidence subject to the motion to suppress. The undersigned allowed the motion in open Court.

A full discussion of the law relating to the illegality of this search is not necessary to the purposes of this opinion. Briefly, however, the government argued that the officer's first inspection of the premises did not amount to a search, and that the evidence gained by the officer's above-described conduct was admissible under the plain view doctrine [3] and constituted the probable cause for the issuance of the warrant.

This Court found the evidence inadmissible as not fitting within the plain view doctrine of *Coolidge* at all. For purposes of the Fourth Amendment,[4] the facts here are very close to those in *U.S. v. Bradshaw*, 490 F.2d 1097 (4th Cir.1974). In that case, as in the case before the Court, a law enforcement agent peered through a crack (in that instance in the back of a closed truck) and saw a large quantity of gallon

plastic jugs containing a white liquid. He seized the jugs, which, as he suspected, contained non-tax-paid whiskey.

In holding the evidence inadmissible over the government's claim of inclusion within the "plain view" exception, the Fourth Circuit discussed "two prerequisites" to the availability of the exception.[5]

First, the officer's presence at the vantage point from which he discovers the evidence in plain view must not amount to an unjustifiable intrusion into an area with respect to which defendant's expectations of privacy are protected by the fourth amendment. That is, the officer must not have entered defendant's zone of privacy, or, if he has, such entry must have been justified by 'a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused.' (Citing *Coolidge*.) Secondly, the discovery of the evidence in plain view must have been inadvertent. *Id.* at 1100.

This Court found that factually, an officer who goes onto a largely enclosed porch of a boarded-up building, bends down to a 3 to 3½-foot height and uses a flashlight to peer through cracks less than ¼ inch in width, has invaded a zone of expected privacy when he peers at the contents of the building. Since inadvertence obviously was not present based on the officer's own testimony that he was looking for just what he found, this Court held the examination of the premises to be a warrantless search, *per se* unreasonable under the Fourth Amendment,[6] *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967), and not within the plain view exception pursuant to *Bradshaw, supra,* and *United States v. Dart,* 747 F.2d 263 (4th Cir.1984). The United States, through

---

**3.** *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

**4.** And the Fourteenth by incorporation. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**5.** The two prerequisites were drawn from *Coolidge v. New Hampshire,* n. 3, *supra.*

**6.** And the Fourteenth by incorporation. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Assistant United States Attorney Jerry Miller, then stated in open court that it could not proceed with prosecution in the face of the order allowing the motion to suppress, and the case was subsequently dismissed.

## II

Neither party sought any order of this Court concerning the disposition of the seized property. That evidence was returned to the State of North Carolina. District Attorney Rusher, chief prosecutor for the relevant state district, then obtained indictment from a state grand jury charging Tarantino with violating North Carolina General Statute § 90–95(a)(1) by manufacturing marijuana, based on the same evidence which this Court previously suppressed in the federal prosecution.

After the return of the North Carolina indictment on January 29, 1986, plaintiff filed complaint in this action March 25, 1986, seeking a permanent injunction against the defendants using in any criminal prosecution of the plaintiff in the state courts any evidence which this Court had already determined was obtained in violation of plaintiff's constitutional rights. The complaint further sought a declaratory judgment that the evidence was obtained in violation of plaintiff's constitutional rights and could not be used in any criminal prosecution against him. This complaint first came on for hearing before the Court April 1, 1986, on plaintiff's ancillary prayer for a temporary restraining order against the use of the questionable evidence in state proceedings.

The argument at that stage focused on whether or not the relief sought was barred by the Anti-Injunction Statute, 28 U.S.C. § 2283, and whether this Court was required to abstain from hearing plaintiff's claim for injunctive relief and entertaining his motions for temporary restraining order and preliminary injunction by the fundamental policy against federal interference with state criminal prosecutions, reaffirmed in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). This Court, however, did not find it necessary to reach those questions at that stage, but denied the temporary restraining order orally in open court on a narrower ground, albeit a ground drawn in part from *Younger v. Harris, supra.* Federal Rules of Civil Procedure, and the American legal tradition, compel this Court before the issuance of such order to determine whether or not the party seeking it has established that "immediate and irreparable injury, loss, or damage will result to the applicant." 28 U.S.C., F.R.C.P., Rule 65.[7]

The Supreme Court expressly held in *Younger:*

> "Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term." *Id.* at 46, 91 S.Ct. at 751.

Therefore, without reaching the merits of the broader argument this Court denied plaintiff's prayer for temporary restraint on the grounds that there was no showing of an irreparable injury for which a remedy at law did not exist.[8]

## III

After failing to obtain the temporary restraining order discussed above, plaintiff amended his complaint to add a third claim for relief against defendant Baker, alleging that Baker's unlawful search amounted to a violation of plaintiff's constitutional rights under color of law in

---

**7.** While the language of the rule applies literally to the obtaining of a temporary restraining order without notice, the element of irreparable injury is analogous to the potential injury necessarily examined by the Court in the issuance of any temporary restraining order or preliminary injunction. *See, e.g. Conservation Council of North Carolina v. Costanzo,* 528 F.2d 250 (4th Cir.1975), *Renegotiation Board v. Bannercraft Clothing Co., Inc.,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974).

**8.** *Cf. Renegotiation Board v. Bannercraft Clothing Co., Inc.,* n. 7, *supra, Johnson v. McNary,* 414 F.Supp. 684 (E.D.Mo.1975).

666

violation of 42 U.S.C. § 1983 and seeking money damages; together with a fourth claim for relief, setting forth a pendent claim against Baker for trespassing; and a new prayer for relief seeking punitive damages.[9] The amendment also adopted and realleged the original complaint and all prayers for relief therein. Defendants then filed the motions which are now before this Court.[10]

The Court will first address the motions of the defendants State of North Carolina and James T. Rusher, District Attorney.[11]

## A

As to both these defendants, the relief prayed is of an injunctive nature, and the motions now before the Court call into full question the *Younger*-related abstention issues previously avoided in the disposition of the prayer for temporary restraint.[12] Congress has declared:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. 28 U.S.C. § 2283.

This act in its present form is the culmination of a statutory tradition dating back to 1793 and changing only by the inclusion of the three exceptions set forth in the present statute.[13] The most famous appli-

cation of this doctrine to criminal prosecution is *Younger v. Harris, supra.* That case, while procedurally distinct from the matter at bar, is parallel in that it involved an attempt to enjoin a state district attorney (Harris) from proceeding with a criminal prosecution in alleged violation of the rights of a defendant. A three-judge district court, acting under the authority of the then-operative version of 28 U.S.C. § 2284, enjoined that prosecution. The Supreme Court reversed. Justice Black, writing for the Court, briefly but exhaustively reviewed the history of the "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Id.* at 41, 91 S.Ct. at 749. The Court found sources for this policy in the "basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief," and basic notions of "comity" inherent in "Our Federalism." *Id.* at 43, 44, 91 S.Ct. at 750.

This Court now holds that the distinctions between the case at bar and *Younger v. Harris* are not sufficient to compel a contrary result and that nothing in the facts at bar brings this controversy within the exceptions set forth in the statute.

## B

Plaintiff attempts to distinguish *Younger* and take this case outside the policy

9. This amendment was made as of course under Rule 15(a), F.R.C.P., defendants not having filed responsive pleadings.

10. Defendant Baker has subsequently filed a second motion to dismiss or in the alternative for summary judgment to which plaintiff has filed written response with supporting memorandum and to which Baker has replied. This motion is disposed of together with the original motion. Despite the lack of a formal hearing on that motion for summary judgment, the parties have had adequate opportunity to deal with all issues raised therein at the hearing of the prior motion and in their written submissions.

11. While Rusher is theoretically sued in his individual capacity, all relief prayed, motions made and reasoning occasioned with reference to him are equally applicable to the State.

12. The Court notes that during the pendency of these motions, the State Superior Court, the Honorable Marvin K. Gray, Judge Presiding, allowed Tarantino's motion to suppress the contested evidence. Judge Gray's ruling was based not on Tarantino's argument that the state courts were bound by this Court's prior ruling, which Gray expressly rejected, but on the same constitutional arguments accepted by this Court in the criminal proceeding discussed in Part I, *supra.* Judge Gray's ruling does not, however, moot the instant controversy since the State of North Carolina has taken an appeal therefrom.

13. 1 Stat. 335, c. 22, § 5. For further discussion of the statutory history, see *Younger v. Harris, supra,* 401 U.S. at 43, 91 S.Ct. at 750, *Toucey v. New York Life Ins. Co.,* 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941).

pronounced by § 2283 on several bases. First, plaintiff points out that the object of the instant lawsuit is not "an injunction to stay proceedings in a state court," but rather to enjoin the parties from introducing certain specific evidence in a proceeding. While literally true, this proffered distinction is of no practical difference and this argument amounts to no more than an ingenious attempt to persuade the Court to undertake indirectly that which it cannot do directly.

It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties ... *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287 [90 S.Ct. 1739, 1743, 26 L.Ed.2d 234] (1970); *Oklahoma Packing Co. v. Gas Co.*, 309 U.S. 4, 9 [60 S.Ct. 215, 218, 84 L.Ed. 447] (1940).

Otherwise put, the prohibition of § 2283 "is comprehensive. It includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process." *Hill v. Martin*, 296 U.S. 393, 56 S.Ct. 278, 80 L.Ed. 293 (1935). The Supreme Court has at least twice dealt with attempts by litigants to persuade the federal courts to entertain proceedings to suppress the use of evidence in pending state proceedings. Twice, the Supreme Court has explained:

If the federal equity power must refrain from staying state prosecutions outright ... how much more reluctant must it be to intervene piecemeal to try collateral issues. *Stefanelli v. Minard*, 342 U.S. 117, 123 [72 S.Ct. 118, 121, 96 L.Ed. 138] (1951); *Kugler v. Helfant*, 421 U.S. 117, 130 [95 S.Ct. 1524, 1533, 44 L.Ed.2d 15] (1975).

The Court therefore finds this argument to be without merit.

Plaintiff further urges that this case comes within the statutory exception set forth at the end of § 2283 permitting a federal court to enjoin a state proceeding "where necessary ... to protect or effectuate its judgments." Plaintiff's argument here is that this Court has previously entered a judgment recognizing an invasion of his constitutional rights and that the injunction against the state proceeding is necessary to protect or effectuate that judgment, citing *Samuel C. Ennis & Co., Inc. v. Woodmar Realty Company*, 542 F.2d 45 (7th Cir.1976); *Johnson v. Radford*, 449 F.2d 115 (5th Cir.1971), and especially relying upon *Deposit Bank of Frankfort v. Board of Councilmen of Frankfort*, 191 U.S. 499, 24 S.Ct. 154, 48 L.Ed. 276 (1903). The *Deposit Bank* case is cited by plaintiff for the proposition that:

[A] right claimed under the Federal Constitution, finally adjudicated in the Federal courts, *can never be taken away or impaired by state decisions. Id.* at 517 [24 S.Ct. at 160].

This is perhaps plaintiff's best argument in opposition to the State-Rusher motions. It has at its foundation the notion expressed in *Deposit Bank* that with reference to federal questions, federal court decisions are binding upon the states and that state courts owe the same respect and comity to federal courts which federal courts afford them under the *Younger* doctrine. However, this again is not sufficient to take the case outside the *Younger* principle. As the Supreme Court recently noted even "a constitutional attack on state procedures themselves" does not automatically vitiate "the adequacy of those procedures for purposes of the *Younger-Huffman* line of cases." *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, — U.S. —, —, 106 S.Ct. 2718, 2724, 91 L.Ed.2d 512, 54 L.W. 4860, 4863 (1986). The cases cited by plaintiff in support of this argument are inapposite. Conspicuously, the language of *Deposit Bank* quoted above deals with an attempt by a state court to "take away or impair" a federal constitutional right "finally adjudicated in the federal courts." This is not the situation in the case at bar. The federal right of Tarantino at issue in all the litigations discussed herein is the right to be "secure ... against unreasonable searches and seizures." U.S. Const.,

Amendment IV.[14] This Court's judgment (technically Order) afforded the suppression of the evidence as a *remedy* for that right. The Supreme Court has, at long last, held:

> "The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure 'work[s] no new Fourth Amendment wrong.' (Citations omitted.) The wrong condemned by the Amendment is 'fully accomplished' by the unlawful search or seizure itself ... and the exclusionary rule is neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.'" *U.S. v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984) (preliminary printing).

The criminal litigation between the state and the defendant does nothing to require this Court to act to protect or effectuate its prior Order forbidding the use of this evidence in the federal prosecution. While requirements of comity and the power of federal courts to establish a rule of decision on federal cases binding upon the courts of the states under *Deposit Bank of Frankfort, supra,* arguably ought to compel the state's courts to reach the same results with reference to the state prosecution, this is a matter which can be addressed to the state judges. Indeed, this Court notes that the only state judge who had addressed the question thus far has done nothing but act consistently with this Court's prior ruling, albeit by independently adopting the same reasoning rather than by applying any principle of comity.

The possibility that state courts at some other level or time may fail to recognize the right of Tarantino under the federal constitution or fail to adequately remedy the same is not an adequate foundation for the injunctive relief herein prayed. As noted above, it is fundamental to the invocation of equitable jurisdiction that no adequate remedy at law exists. The state statutes of North Carolina provide for appellate and discretionary review. N.C.Gen. Statutes 15A–1444, *et seq.* Should that relief fail plaintiff, the laws of the United States provide for review by the United States Supreme Court, 28 U.S.C. Chapter 133. Failing all, plaintiff finally has available relief by *habeas corpus* or successor writ in the district courts of the United States.[15] In short, given the overriding interest of the state in the prosecution of its criminal laws as recognized in *Younger,* its predecessors and progeny and the availability of remedies at law as discussed *supra,* it remains "perfectly natural for our cases to repeat time and time again that the *normal* thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Younger,* 401 U.S. at 45, 91 S.Ct. at 751, emphasis supplied in *Ohio Civil Rights Commission, supra,* —— U.S. at ——, 106 S.Ct. at 2723.

The cases cited by plaintiff supporting the application of this exception generally are civil matters involving actual interference with the effectuation of the orders or judgment of the federal court in state litigation between either parties or privies to parties in the original federal actions or persons who could have been joined therein. *See, e.g., Hayward v. Clay,* 456 F.Supp. 1156 (D.S.C.1977); *Swann v. Charlotte-Mecklenburg Board of Education,* 501 F.2d 383 (4th Cir.1974). They are not apposite to the case at bar.

---

**14.** Incorporated against the states by the Fourteenth Amendment. *E.g., Mapp v. Ohio, supra.*

**15.** Plaintiff argues with some merit that *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), by its holding "[T]hat where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494, 96 S.Ct. at 3052. In this context, the fullness and fairness of the procedures in North Carolina, should they not afford plaintiff the relief therein sought, will be for another court or another day.

## C

Plaintiff finally seeks to take this case outside the rule of *Younger* on the theory that *Younger* left room for federal intervention in state criminal proceedings where there is a showing of "bad faith" or "harassment" by state officials responsible for the prosecution. *Id.* 401 U.S. at 54, 91 S.Ct. at 755. In support of this theory the plaintiff cites *Kugler v. Helfant, supra,* and *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971). Both those cases involved presentation of similar arguments; both rejected such arguments on the facts then before the court. The *Kugler* opinion did so, stating:

> "Only if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process." *Kugler,* 421 U.S. at 124, 95 S.Ct. at 1530.

The *Kugler* court then proceeded to recognize the impossibility of predefining extraordinary circumstances, but found that it would require "a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings." For the reasons already set forth, this Court does not recognize the facts at bar as presenting such an exceptional circumstance. Indeed, the court in *Perez* had already held that:

> [O]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate. *Id.* 401 U.S. at 85, 91 S.Ct. at 677.

Plaintiff here asserts that this is a case of proven harassment since the state first brought a criminal warrant, then dismissed the same in deference to the federal indictment, and then indicted after this Court's

Order of suppression. Nonetheless, the defendant has been faced with a true defense of a state criminal prosecution only once. This Court cannot find the dismissal of the prior warrant in the face of federal prosecution sufficient to constitute "proven harassment." While this Court stands confident in its suppression order, nonetheless this Court recognizes that the state was not a party to the proceeding in which the suppression order was entered; neither could it intervene therein.[16] Therefore, this Court cannot hold conclusively that the state is now proceeding "without a reasonable expectation of obtaining a valid conviction." Thus, the bad faith exception is not available to plaintiff or this Court.

## D

Alternatively, the state and its district attorney are entitled to the relief sought in their motions for summary judgment or dismissal in that plaintiff's complaint represents an attempt to circumvent the exhaustion requirements of habeas corpus relief. Since this action in effect, albeit indirectly, seeks to anticipatorily invalidate a conviction, the true relief here is in the nature of that provided under 28 U.S.C. § 2254. That relief under 28 U.S.C. § 2254(b) is conditioned upon a showing that "applicant has exhausted the remedies available in the courts of the states," or that there is no such available remedy. *See, e.g. Slayton v. Smith,* 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971). In dealing with a parallel case, the Supreme Court adopted and approved the language of the Second Circuit to the effect that:

> Use of the Civil Rights Statutes to secure release of persons imprisoned by State Courts would thus have the effect of repealing 28 U.S.C. § 2254; of course, such was not the intent of Congress. *Preiser v. Rodriguez,* 411 U.S. 475, 479 [93 S.Ct. 1827, 1830, 36 L.Ed.2d 439] [quoting *Rodriguez v. McGinnis,* 451 F.2d 730, 731 (2nd Cir.1971)].

**16.** Since the prior action before this Court did not involve the constitutionality of a state statute, but only a state search, a state's right to intervene under 28 U.S.C. § 2403 was not available.

More recently, the Fourth Circuit in *Hamlin v. Warren,* 664 F.2d 29 (4th Cir. 1981) has applied the *Preiser v. Rodrigeuz* reasoning to hold that a civil rights action seeking monetary damages, declaratory judgment and prospective injunctive relief, although omitting the prayer for immediate release condemned in *Preiser* cannot be used to circumvent the exhaustion requirement. This Court holds that Tarantino, by his action against the state and its district attorney in the instant case, is attempting precisely that act of circumvention and again concludes that the motions by these defendants must be allowed.

### IV

The motions of defendant Baker present differing and in some instances more difficult questions. Insofar as plaintiff's complaint prays injunctive relief against Baker, the reasoning of Part III, *supra,* is applicable and his motions for summary judgment and/or dismissal will be allowed to that extent. However, Baker is also sued for money damages, both in his official and individual capacities, under 42 U.S.C. § 1983 for violation of plaintiff's constitutional rights under the fourth and fourteenth amendments, and for trespass in a pendent state law claim. These must be dealt with separately.

### A

▉ As to the suit against Baker in his official capacity, his motion is well taken. A suit against an officer in his official capacity is in reality a suit against the governmental entity that employs the officer. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Therefore, in order to maintain an action under § 1983 against the officer in his official capacity the plaintiff must allege and prove that the constitutional violation was caused by some custom or policy of the governmental entity. *Id.* at 690–691, 98 S.Ct. at 2035–36. In the instant case plaintiff has made no such allegation. Plaintiff seeks exception from the *Monell* doctrine based on the recent

Supreme Court case of *Pembaur v. City of Cincinnati,* — U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In that case, as in this, plaintiff sued under § 1983 basing his claim for relief on an illegal search and seizure without alleging or proving either an official policy or a pattern or practice amounting to such a policy. In distinguishing *Monell* and upholding that plaintiff's right to sue, the Supreme Court stated:

> No one has ever doubted ... that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body ... because even a single decision by such a body unquestionably constitutes an act of official government policy. At ——, 106 S.Ct. at 1298 (citations omitted).

The Court went on to reason that where the decision to follow a "particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy'...." *Pembaur,* at ——, 106 S.Ct. at 1299. In that case the decision to conduct the search and seizure was made by the county prosecutor whom the Supreme Court by following the conclusion of the court of appeals determined to be authorized to establish county policy. Plaintiff argues from that foundation that Baker in the instant case, by having decided to conduct the search that he did, established himself as the local government's decisionmaker, and that therefore his decision became "policy" for purposes of § 1983. Plaintiff's argument reads too much into the language of the Court in *Pembaur* and yet reads too little of that language. The Court expressly stated:

> "[W]e hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered."

There is nothing in the pleadings or otherwise before the Court to indicate that Baker had any such final authority. To reason as plaintiff proposes would compel

the Court to conclude that the Supreme Court intended the *Pembaur* exception to eat the *Monell* rule. It is difficult to conceive of a case in which any officer has acted that does not involve that officer making a decision to act. If this is all that is required to bring a fact situation outside *Monell,* then *Monell* has been overruled rather than distinguished by *Pembaur* and the Court indicates no such intent. Therefore, the only sound conclusion is that Baker's motion for dismissal or summary judgment in his official capacity is well taken.

**B**

▮ In moving for summary judgment in his individual capacity, defendant Baker argues that he is protected by the qualified immunity afforded "governmental officials performing discretionary functions" under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1981) and *Mitchell v. Forsyth,* 472 U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). *Harlow* abandoned the previously existing test for qualified immunity and held that the standard henceforth would be an "objective one" that "governmental officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. An avowed purpose of this change in the test was to permit the disposition of "insubstantial claims" without trial pursuant to Rule 56, F.R.C.P., on motions for summary judgment. Therefore, an application of the *Harlow* test to this case is most apposite, assuming that the police officer conducting a search is within the definition of a "governmental official performing a discretionary function." *Mitchell* rephrased the test in examining a lawsuit against the Attorney General of the United States for national security wiretapping. In that matter Mitchell had concededly authorized a warrantless wiretap regarding a domestic threat to national security. That type of wiretap was subsequently declared illegal in *United States v.*

*United States District Court,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) (commonly called the *Keith* decision). In reviewing the denial of summary judgment in favor of the Attorney General, the court stated:

> Under *Harlow v. Fitzgerald,* Mitchell is immune unless his actions violated clearly established law. *Mitchell,* 472 U.S. at ——, 105 S.Ct. at 2808.

Since the law was not clearly established at the time of Mitchell's act, the Court ruled that Mitchell was entitled to summary judgment on the ground of qualified immunity. Baker urges that he is entitled to the same.

It is not necessary for this Court to decide whether Baker's status as a police officer conducting a warrantless search is within the classification of public official governed by *Harlow* and *Mitchell* since under either formulation of the test he has not established his entitlement to summary judgment. Under the *Harlow* formulation the right of the people to be free from unlawful search and seizure is a "clearly established ... constitutional right[ ] of which a reasonable person would have known." Under the *Mitchell* formulation this Court cannot conclude as a matter of law based on the materials now before the Court that Baker's actions did not violate "clearly established law." See Part I, *supra.*

**C**

▮ Baker finally urges that he is entitled to summary judgment in his individual capacity as to the claims for monetary damages on the same basis as that allowed in favor of the other defendants in the claims for injunctive relief, that is, the "prelitigation" theory drawn from *Hamlin v. Warren, supra.* However, *Hamlin v. Warren* was applying *Preiser v. Rodriguez, supra,* which had only forbidden bringing of an action the result of which would have been compelled release as being an attempted habeas corpus without exhaustion. The *Preiser* decision as noted in *Hamlin* ex-

pressly left open the question of whether or not the exhaustion requirement of 28 U.S.C. § 2254 applied in the case of a money damages action "flying the banner of 42 U.S.C. § 1983." *Hamlin* at 30. As the *Hamlin* case further points out, a subsequent Supreme Court decision *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) applied the *Prieser* dictum, dismissed an action for injunctive relief but permitted a damages claim to go forward while the plaintiffs exhausted their state remedies in the habeas area.

As noted above, *Hamlin* held the exhaustion requirement applicable to any such § 1983 action "calling into question the validity of a state court conviction," *id.* 32, without regard to the nature of the remedy sought. Unfortunately for Baker's argument, the instant action against Baker under § 1983 does not even prospectively call into question the validity of the state court conviction. As noted by this Court above, and as argued by defendants in other portions of their summary judgment motions, *Stone v. Powell, supra,* makes it plain that the validity of a search and seizure and the validity of a conviction are two very different questions. All that is attacked here is the validity of the search and seizure. While it is true the application of the classic remedy for the violation of the rights asserted would in fact result in the impossibility of obtaining a conviction or the invalidity of one already obtained, nonetheless that is not what plaintiff seeks by the damages claim against Baker. Nor could he attain it by amendment of his complaint against Baker even were he successful on all other issues. Therefore, *Hamlin v. Warren* and *Preiser v. Rodriguez* have no application to these facts. *Wolff v. McDonnell* does. Baker's argument does not entitle him to summary judgment in his individual capacity.

### D

Baker also moves for summary judgment or dismissal of the pendent trespass claim. That motion is based on the assumption that Baker's motion for summary judgment or dismissal of the § 1983 claims against him individually would be allowed. Since this is not the case, the motion for summary judgment of the pendent claim must be denied also.

### V

Two housekeeping matters remain. Plaintiff has sought return of property seized under Rule 41(e) of the Federal Rules of Criminal Procedure. Since the property is now held under the state case, that rule has no applicability and that prayer is denied. Second, in response to Baker's motion for summary judgment, plaintiff has asserted that he is entitled to summary judgment against Baker in his individual capacity noting that "the weight of authority is that summary judgment may be rendered in favor of the opposing party even though he has made no formal cross motion under rule 56." 10A *Wright, Miller and Kane, Federal Practice and Procedure* (Civil) § 2720, pp. 29–30 (1983). This appears to be the rule in the Fourth Circuit. *U.S. v. Jacobs*, 298 F.2d 469 (4th Cir.1961). However, in this case plaintiff is not entitled to that summary judgment. Summary judgment lies only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Plaintiff has not so established. Without attempting to list exhaustively the remaining questions of fact, plaintiff has presented no affidavits concerning his ownership and right to immediate possession of the marijuana and related paraphernalia seized in this case, nor its value, nor the nature of his damages. This motion will be denied without prejudice to the right of either Baker or plaintiff to move for summary judgment after discovery may have more fully established the operative facts.

By Judgment and Order filed contemporaneously with this memorandum, the Court will order the results set forth above.

## ORDER ALLOWING PARTIAL SUMMARY JUDGMENT

For the reasons more fully set forth in the Memorandum of Opinion filed simultaneously herewith, the Court hereby enters the following Orders:

1. The motion to dismiss or for summary judgment of the defendant State of North Carolina is ALLOWED.

2. The motion to dismiss or for summary judgment of the defendant James T. Rusher is ALLOWED individually and in his official capacity.

3. The motion to dismiss or for summary judgment of the defendant B.R. Baker, Jr., Detective, Avery County Sheriff's Department, is ALLOWED in his official capacity and DENIED in his individual capacity.

4. All claims for injunctive and declaratory relief are DISMISSED.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that this matter be DISMISSED as to the defendant State of North Carolina, as to the defendant James T. Rusher and as to the defendant B.R. Baker, Jr., in his official capacity.