# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JAMES HARVEY,

                *Plaintiff-Appellee,*

v.

ROBERT F. HORAN, JR.,
Commonwealth's Attorney, County
of Fairfax,

                *Defendant-Appellant.*

JENNIFER THOMPSON; KAREN R.
POMER; JERI ELSTER,

                *Amici Curiae.*

No. 01-6703

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-00-1123-A)

Argued: September 26, 2001

Decided: January 23, 2002

Before WILKINSON, Chief Judge, and NIEMEYER and
KING, Circuit Judges.

---

Reversed and remanded by published opinion. Chief Judge Wilkinson
wrote the opinion, in which Judge Niemeyer joined. Judge King wrote
an opinion concurring in part and concurring in the judgment.

---

## COUNSEL

**ARGUED:** Jack L. Gould, Fairfax, Virginia, for Appellant. Peter J.
Neufeld, THE INNOCENCE PROJECT, New York, New York, for

Appellee. **ON BRIEF:** Barry C. Scheck, THE INNOCENCE PROJ-
ECT, New York, New York; Lisa B. Kemler, ZWERLING & KEM-
LER, P.C., Alexandria, Virginia, for Appellee. John D. Cline,
FREEDMAN, BOYD, DANIELS, HOLLANDER, GOLDBERG &
CLINE, P.A., Albuquerque, New Mexico, for Amici Curiae.

---

**OPINION**

WILKINSON, Chief Judge:

James Harvey, a Virginia prisoner, seeks a constitutional right of
access to DNA evidence under 42 U.S.C. § 1983. The district court
found that Harvey had a due process right of access to the DNA evi-
dence and a right to conduct testing upon the evidence using technol-
ogy that was unavailable at the time of his trial and at the time his
conviction became final. The district court also concluded that Har-
vey's claim was not in effect a petition for a writ of habeas corpus.
We disagree. Because substantively Harvey fails to state a claim
under § 1983, and because procedurally his claim amounts to a suc-
cessive petition for a writ of habeas corpus brought without leave of
court, we reverse the judgment of the district court and remand the
case with directions to dismiss it.

I.

On April 30, 1990, James Harvey was convicted of rape and forc-
ible sodomy by a jury in Fairfax County Circuit Court. He was sen-
tenced to consecutive terms of twenty-five years for the rape and
fifteen years for the forcible sodomy. Harvey did not appeal his con-
viction but did file a state petition for a writ of habeas corpus which
was rejected by the Virginia Supreme Court in 1993.

Conventional serology testing on the items recovered from the rape
kit revealed the presence of spermatozoa on the victim's mouth
smear, vaginal smear, and thigh smear, as well as in two swab sam-
ples and on the victim's pantyhose. Neither Harvey nor his co-
defendant, who was also convicted, could be excluded as a result of
the Restriction Fragment Length Polymorphism ("RFLP") DNA test-

ing available at the time of the trial. And there was other substantial evidence of Harvey's guilt. For example, Harvey's co-defendant testified that Harvey instigated the attack and that Harvey admitted he did not ejaculate while raping the victim. The victim heard one perpetrator call the other "Harv." Another prosecution witness, Curtis Ivy, told the police that Harvey confessed his involvement in the attack. Ivy testified that Harvey owned the maroon shirt identified as belonging to one of the assailants and that Harvey wore the shirt on the date of the attack. Harvey also threatened Ivy shortly before his trial, further suggesting Harvey's guilt.

On February 25, 1994, Harvey filed an action in federal district court against the Governor of Virginia pursuant to 42 U.S.C. § 1983. Harvey alleged that the state's failure to retest the biological evidence in his case violated his rights under the Due Process Clause. The district court ruled that Harvey's claim for additional DNA testing had to be refiled as a petition for a writ of habeas corpus under 28 U.S.C. § 2254. On July 25, 1995, the district court dismissed Harvey's petition. The court found that Harvey had failed to exhaust state remedies and had failed to raise his claim for DNA testing in his state petition for habeas corpus. Therefore, the district court concluded that any attempt by Harvey to raise his claim would be barred by Va. Code § 8.01-654(B)(2) and that Harvey's claim was procedurally defaulted. Because Harvey had not shown cause for his default in the state courts or prejudice resulting therefrom, the district court concluded that Harvey's claim had to be dismissed. Harvey did not appeal the district court's ruling.

In 1996, the Innocence Project contacted the Virginia Division of Forensic Science on Harvey's behalf in an attempt to obtain the biological evidence at issue for Short Term Repeat ("STR") DNA testing. STR DNA testing was unavailable at Harvey's trial and at the time his conviction became final. The Division of Forensic Science recommended that the evidence be requested from the Fairfax County Commonwealth's Attorney's office. In February 1998 and July 1999, the Innocence Project requested the biological evidence from the Commonwealth's Attorney.

In October 1999, an Assistant Commonwealth's Attorney denied Harvey's request for access to the evidence. The attorney stated that

even if Harvey was excluded as a contributor of the genetic material, it would not prove his innocence because the victim had stated that only one perpetrator had ejaculated. The attorney concluded that post-conviction DNA testing was not warranted because there was no reasonable likelihood that it would establish Harvey's innocence.

Harvey then filed this action in the district court pursuant to 42 U.S.C. § 1983. Harvey alleged, *inter alia*, that Commonwealth's Attorney Robert Horan had deprived him of a due process right of access to the DNA evidence. Harvey stated that at trial, the prosecution identified him as the first assailant. The victim testified that the first assailant was the only one who orally sodomized her. And the victim was unsure whether the first assailant had ejaculated. Therefore, Harvey argued that if the STR DNA test showed that he was not the source of sperm on the victim's mouth smear, or if it showed two genetic profiles other than his on the victim's vaginal swabs or pantyhose, the test would provide a basis for Harvey to prove his innocence.

The district court found Harvey's arguments persuasive, holding that he had a due process right of access to the DNA evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), and a right to conduct DNA testing on the biological evidence using the new STR technology. The court also concluded that Harvey's claim was not in effect a petition for a writ of habeas corpus because Harvey was not seeking immediate release from prison or challenging his conviction. *See Harvey v. Horan*, 119 F. Supp. 2d 581 (E.D. Va. 2000); *Harvey v. Horan*, No. Civ.A. 00-1123-A, 2001 WL 419142 (E.D. Va. Apr. 16, 2001). Commonwealth's Attorney Horan appeals.

## II.

Commonwealth's Attorney Horan contends both that § 1983 is not an appropriate vehicle for Harvey's action and that procedural flaws require dismissal of Harvey's claim because it is in reality a successive petition for a writ of habeas corpus brought without leave of court. Harvey responds that his fundamental right to prove his innocence by retesting the DNA evidence in his case is protected by the Due Process Clause and that § 1983 is an appropriate avenue to vindicate his claim.

While we agree with Harvey that the question of guilt or innocence lies at the heart of the criminal justice system, we also believe that the proper process for raising violations of constitutional rights in criminal proceedings cannot be abandoned. Because the substance of a claim cannot be severed from the proper manner of presenting it, we find Harvey's § 1983 action to be deficient.

### A.

Substantively, Supreme Court precedent makes clear that Harvey has failed to state a claim under § 1983. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a convicted criminal defendant cannot bring a § 1983 action that would "necessarily imply the invalidity of his conviction or sentence" unless he proves that his "conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 486-87.

In *Heck*, the Supreme Court concluded that bringing a § 1983 action for damages arising from a still valid state conviction would be jumping the gun. In reaching its conclusion, the Court analogized a § 1983 claim that challenges the legality of a state conviction to the common law cause of action for malicious prosecution. The Court stated that "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck*, 512 U.S. at 484. The Court emphasized that civil tort actions are simply "not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486. Allowing them to be used for that purpose would undercut the long-standing concern not to undermine the finality of criminal convictions through civil suits. *Id.* at 484-86. The Court noted in conclusion:

> We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.

*Id.* at 489.

While *Heck* dealt with a § 1983 claim for damages, the Court did not limit its holding to such claims. And we see no reason why its rationale would not apply in a situation where a criminal defendant seeks injunctive relief that necessarily implies the invalidity of his conviction. *See Edwards v. Balisok*, 520 U.S. 641, 648-49 (1997) (leaving issue open). Harvey's § 1983 claim does just that. He seeks access to biological evidence to challenge the fact or duration of his confinement. Harvey claims that he is innocent and that further DNA testing will lead to his exoneration. Because he seeks to use § 1983 to invalidate a final state conviction whose lawfulness has in no way been impugned, his suit fails under *Heck*. It must be dismissed for failure to state a claim.[1]

Harvey relies on the fact that DNA testing may also conclusively prove his guilt in arguing that his claim does not necessarily imply the invalidity of his conviction. However, this attempt to avoid *Heck* fails. Harvey is seeking access to DNA evidence for one reason and one reason only — as the first step in undermining his conviction. He believes that the DNA test results will be favorable and will allow him to bring a subsequent motion to invalidate his conviction. As such, an action under 42 U.S.C. § 1983 cannot lie.

The implications of circumventing *Heck* are no small matter. Harvey would have this court fashion a substantive right to post-conviction DNA testing out of whole cloth or the vague contours of the Due Process Clause. We are asked to declare a general constitutional right for every inmate to continually challenge a valid convic-

---

[1] Our good concurring colleague suggests that *Heck* might permit a state prisoner to come into federal court when the state prisoner sought the release of any available evidence. If that were the case, *Heck* would allow a broad-ranging post-conviction discovery right on the part of state prisoners proceeding in the first instance in federal court. Our concurring colleague recognizes that this cannot be the case. The whole point of *Heck* was to protect the finality of state judgments of conviction from challenge via unexhausted § 1983 actions. As the second section of our concurring colleague's opinion ably demonstrates, the utilization of § 1983 by state prisoners to obtain evidence in the first instance in federal court meets with a variety of obstacles. In sum, the second section of our concurring brother's opinion underscores why the broad-ranging right intimated in the first section cannot exist.

tion based on whatever technological advances may have occurred since his conviction became final.

The Supreme Court has made clear that the finality of convictions cannot be brought into question by every change in the law. For example, under *Teague v. Lane*, a new rule cannot be applied retroactively to cases on collateral review unless the rule "falls within one of two narrow exceptions to the general rule of nonretroactivity." *Tyler v. Cain*, 121 S. Ct. 2478, 2483 (2001) (discussing *Teague v. Lane*, 489 U.S. 288, 310-13 (1989)). Similarly, we believe that finality cannot be sacrificed to every change in technology. The possibility of post-conviction developments, whether in law or science, is simply too great to justify judicially sanctioned constitutional attacks upon final criminal judgments.

In so holding, we acknowledge that finality is not a value that trumps all others. In some circumstances newly discovered evidence may warrant a new trial. *See, e.g.*, *United States v. Christy*, 3 F.3d 765, 768 (4th Cir. 1993). But there is no newly discovered evidence in this case. Instead, Harvey seeks to subject existing biological evidence to new DNA testing. This evidence was already subjected to DNA testing using the best technology available at the time Harvey's conviction became final. Establishing a constitutional due process right under § 1983 to retest evidence with each forward step in forensic science would leave perfectly valid judgments in a perpetually unsettled state. This we cannot do. In *Teague*, the Court stressed that finality "is essential to the operation of our criminal justice system," and that "[w]ithout finality, the criminal law is deprived of much of its deterrent effect." 489 U.S. at 309 (plurality opinion). *See also McCleskey v. Zant*, 499 U.S. 467, 491-92 (1991). While finality is not the sole value in the criminal justice system, neither is it subject to the kind of blunt abrogation that would occur with the recognition of a due process entitlement to post-conviction access to DNA evidence.

Furthermore, *Heck* teaches that § 1983 does not exist to provide an open-ended assault on the finality of criminal judgments. *See Heck*, 512 U.S. at 486-87. Instead, § 1983 exists for the more limited purpose of redressing violations of the Constitution and federal statutes. Harvey has made no argument that his conviction violates the Constitution or any federal law. In fact, at oral argument Harvey conceded

that he received due process under the law and under the science in existence when he was convicted in 1990. To confer upon Harvey a wide-ranging constitutional right in the absence of any argument that his underlying conviction violated the Constitution or a federal statute is simply beyond judicial competence.

In holding that Harvey has failed to state a claim under § 1983, we do not declare that criminal defendants should not be allowed to avail themselves of advances in technology. Rather, our decision reflects the core democratic ideal that if this entitlement is to be conferred, it should be accomplished by legislative action rather than by a federal court as a matter of constitutional right. Permitting Harvey's § 1983 claim to proceed would improperly short-circuit legislative activity by allowing judges, rather than legislatures, to determine the contours of the right.

This is not an area in which legislatures have been inactive. For example, the Innocence Protection Act of 2001 has been introduced in both houses of Congress. *See* S. 486, 107th Cong. (2001), 147 Cong. Rec. S1999 (Mar. 7, 2001); H.R. 912, 107th Cong. (2001). The Act would increase the availability of post-conviction DNA testing for a person convicted of a federal crime. The Act would also condition the grant of federal funds for state DNA-related programs on an assurance that the state will make post-conviction DNA testing available in specified types of cases. And the Act would require states to increase the availability of post-conviction DNA testing for death row inmates. *See* S. 486 §§ 101-104, 147 Cong. Rec. at S2001-03; H.R. 912 §§ 101-104.

Virginia has also passed legislation that increases the availability of post-conviction DNA testing. Currently, Va. Code § 19.2-327.1 (Michie Supp. 2001) allows a convicted felon to apply to the circuit court for DNA testing if, *inter alia*, the biological evidence was not previously subjected to the current DNA testing method and the testing is "materially relevant, noncumulative, and necessary and may prove the convicted person's actual innocence." *Id.* Additional statutory sections, scheduled to become effective on November 15, 2002, would allow the Supreme Court of Virginia to issue writs of actual innocence based on the results of post conviction DNA testing. *See* Va. Code §§ 19.2-327.2 to -327.6 (Michie Supp. 2001).

Allowing Harvey's action to proceed under § 1983 would judicially preempt legislative initiatives in this area. At oral argument, Harvey urged us to use the balancing test of *Mathews v. Eldridge* to fashion a broad constitutional due process right of access to DNA testing. *See* 424 U.S. 319, 334-35 (1976). When identifying the specific dictates of due process, *Mathews* states that a court should balance three factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the . . . administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Harvey urges us to balance, under *Mathews*, an inmate's need for post-conviction DNA testing against the administrative burden to the state of providing it. However, this very balance is the one that legislative bodies are currently trying to strike. Establishing a federally supervised right of access via *Mathews* would cut off this on-going process and place the federal courts in a distinctly legislative posture.

## B.

We thus hold that Harvey fails to state a claim under § 1983. We now explain why his claim is more properly pressed as a habeas corpus petition — and as such, why his claim fails. Recognition of the courts' obligation to the habeas corpus process reinforces the substantive point that the district court should have dismissed Harvey's § 1983 claim.

In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court held that when a state prisoner challenges the fact or duration of his confinement and the relief he seeks is immediate or speedier release from imprisonment, "his sole federal remedy is a writ of habeas corpus." 411 U.S. at 500. The Court emphasized that despite the literal applicability of § 1983's broad, general terms, the federal habeas corpus statute is "explicitly and historically designed to provide the means for a state prisoner to attack the validity of his confinement." *Id.* at 489-90. The Supreme Court was especially concerned that the habeas corpus exhaustion requirement not be circumvented. *Id. See also* 28 U.S.C. § 2254(b) (requiring exhaustion of state remedies before a federal habeas action challenging a state conviction can pro-

ceed). The Court stressed that the exhaustion requirement "is rooted in considerations of federal-state comity," and that Congress has decided that exhaustion of state remedies in cases where a state prisoner challenges the fact or duration of his confinement "will best serve the policies of federalism." *Preiser*, 411 U.S. at 491-92 & n.10.

In contrast to habeas corpus claims, § 1983 claims can come immediately to federal court, without any need for the exhaustion of state remedies. *See Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 500-01, 516 (1982). The *Preiser* Court stressed that "[i]t would wholly frustrate explicit congressional intent" to allow state prisoners to evade the exhaustion requirement "by the simple expedient" of putting a § 1983 label on their pleadings. 411 U.S. at 489-90. Harvey was convicted by the Commonwealth of Virginia. If remedial steps are to be taken, the courts of the Commonwealth must have the first shot at them. Allowing Harvey to bypass the exhaustion requirement of § 2254(b) would, by contrast, give federal courts the right to initial review of innumerable state judgments.

Harvey argues, however, that he is not bound by *Preiser* because he is not presently challenging the fact or duration of his confinement. He claims that he is seeking access to DNA evidence that will hopefully allow him to challenge his conviction at a later date. This claim is unavailing. We have squarely held that a state prisoner's label for his claim cannot be controlling, even when the prisoner does not request immediate release. *See Hamlin v. Warren*, 664 F.2d 29, 30, 32 (4th Cir. 1981). In *Hamlin*, we held that a prisoner's § 1983 claim had to proceed under the habeas framework because he was seeking to establish "every predicate" for a subsequent request for release. *Id.* We concluded that when a complaint calls into question the validity of a state court conviction and "has all the earmarks of a deliberate attempt to subvert the [exhaustion] requirement of § 2254(b)," the petitioner must observe the habeas requirements, "notwithstanding the absence of any request for release." *Id.* at 32. To hold otherwise would sanction an end run around the exhaustion requirement by "anyone who could state a viable civil rights claim." *Id. See also Pressly v. Gregory*, 831 F.2d 514, 518 (4th Cir. 1987). Therefore, we must examine whether a state prisoner's claim falls within the federal habeas corpus statute. If it does, the claim cannot proceed under § 1983.

Under *Preiser* and *Hamlin*, Harvey's sole federal remedy is a writ of habeas corpus. Like the prisoner in *Hamlin*, Harvey is challenging the validity of his conviction even though he is not seeking immediate release. Harvey seeks access to DNA evidence to attempt to prove that he is innocent. He is trying to use a § 1983 action as a discovery device to overturn his state conviction. The Supreme Court has made clear that habeas corpus relief is available "to attack future confinement and obtain future releases." *Preiser*, 411 U.S. at 487. This is precisely what Harvey is attempting to do — use his claim for access to evidence to set the stage for a future attack on his confinement. Therefore, his claim is effectively a petition for a writ of habeas corpus.

The district court found that under *Brady v. Maryland*, 373 U.S. 83 (1963), Harvey had a due process right of access to the DNA evidence and a right to conduct new testing on the evidence. The district court concluded that Harvey had a valid *Brady* claim because the DNA testing "could constitute material exculpatory evidence." *Harvey v. Horan*, No. Civ.A. 00-1123-A, 2001 WL 419142, at *5 (E.D. Va. Apr. 16, 2001). We are not persuaded. Harvey does not state a valid *Brady* claim because he is not challenging a prosecutor's failure to turn over material, exculpatory evidence that, if suppressed, would deprive the defendant of a fair trial. *See United States v. Bagley*, 473 U.S. 667, 675-76 (1985). Harvey received a fair trial and was given the opportunity to test the DNA evidence during his trial using the best technology available at the time. However, even were we to accept Harvey's analogy to *Brady*, it would only reinforce the conclusion that Harvey is bringing a habeas action rather than a § 1983 claim because *Brady* claims are typically raised in habeas petitions. *See, e.g.*, *Williams v. Taylor*, 529 U.S. 420, 437-40 (2000) (addressing state prisoner's *Brady* claim brought in a federal habeas proceeding); *Strickler v. Greene*, 527 U.S. 263 (1999) (same); *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) (same); *Wood v. Bartholomew*, 516 U.S. 1 (1995) (same).

We thus proceed to consider Harvey's claim as one brought in habeas corpus. As a habeas petition, Harvey's action must be dismissed as a successive petition brought without leave of court. In 1994, Harvey brought his claim for access to DNA evidence as a federal petition for a writ of habeas corpus in the district court. The dis-

trict court dismissed Harvey's claim as procedurally defaulted. The court found that, even though Harvey had knowledge of the factual basis for his claim at the time he filed a state habeas petition, he failed to raise his claim in state court. Therefore, pursuant to Va. Code § 8.01-654(B)(2), which states that "[n]o writ [of habeas corpus] shall be granted on the basis of any allegation the facts of which the petitioner had knowledge at the time of filing any previous petition," Virginia would bar Harvey's claim. Because Harvey failed to show cause for his default or prejudice resulting therefrom, the district court dismissed Harvey's claim.

The Supreme Court in another case subsequently reinforced the district court's approach by stating that a state procedural bar "provides an independent and adequate state-law ground for [a] conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray*, 518 U.S. at 161-62 (addressing application of Va. Code § 8.01-654(B)(2)). Harvey had the opportunity to show cause for his default and demonstrate prejudice. But he never appealed the district court's decision.

Harvey has now brought the same claim for access to DNA evidence in this action. Pursuant to 28 U.S.C. § 2244(b)(3), successive habeas petitions may only be filed with leave of court.[2] In order to qualify as a successive petition, the dismissal of the first habeas petition must be on the merits. *See Slack v. McDaniel*, 529 U.S. 473, 485-89 (2000).

Our sister circuits have held that dismissal of a habeas petition for

---

[2]Even though Harvey's first federal habeas petition was filed in 1994, before the 1996 effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), his current petition was filed in July 2000, after AEDPA's effective date. We conclude that AEDPA's requirements in 28 U.S.C. § 2244(b) for a successive petition apply based on when the second petition was filed, not the first. *See, e.g.*, *Tyler v. Cain*, 121 S. Ct. 2478 (2001) (requiring compliance with § 2244(b) when the original habeas petition was filed pre-AEDPA but the successive one was filed after AEDPA's effective date); *Daniels v. United States*, 254 F.3d 1180, 1184-88 (10th Cir. 2001) (same). Therefore, § 2244(b) applies to Harvey.

procedural default is a dismissal on the merits for purposes of determining whether a habeas petition is successive. *See, e.g., In re Cook*, 215 F.3d 606, 608 (6th Cir. 2000); *Carter v. United States*, 150 F.3d 202, 205-06 (2d Cir. 1998); *Hawkins v. Evans*, 64 F.3d 543, 547 (10th Cir. 1995); *Bates v. Whitley*, 19 F.3d 1066, 1067 (5th Cir. 1994); *Howard v. Lewis*, 905 F.2d 1318, 1322-23 (9th Cir. 1990). We agree. By every reckoning, a dismissal for procedural default is a dismissal on the merits. It is critically different from a dismissal for failure to exhaust which does not prevent federal habeas review at a later date.

In light of this, the district court's dismissal of Harvey's original habeas petition for procedural default was a dismissal on the merits. Harvey's current petition is accordingly a successive petition for a writ of habeas corpus. And because Harvey did not obtain leave to file this petition, his claim must be dismissed pursuant to 28 U.S.C. § 2244(b)(3). In addition, even if Harvey had sought leave of court, it could not have been granted in view of the unambiguous language of 28 U.S.C. § 2244(b)(1), which states: "A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." This is reinforced by the language of Rule 9(b) of the Rules Governing § 2254 Cases, which states that "[a] second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits." *See also Clanton v. Muncy*, 845 F.2d 1238, 1241 (4th Cir. 1988); *Turner v. Artuz*, 262 F.3d 118, 122-24 (2d Cir. 2001).

Appellant Horan points to strong evidence of Harvey's guilt in arguing that there is no prejudice from the denial of post-conviction DNA testing in this case. But in Harvey's case, the issue of prejudice has already been adjudicated by the district court's dismissal of Harvey's first habeas petition as procedurally defaulted. Harvey has never appealed this. This does not mean that there can be no relief for Harvey. What it does mean, however, is that any such relief must be conferred by either state or federal legislation or by the state courts acting under their own constitutions. Federal and state legislatures and state courts are free in ways that we are not to set the ground rules by which further collateral attacks on state convictions such as Harvey's may be entertained. For example, the proposed Innocence Protection Act of 2001 contains a provision explicitly stating that an application

by a state death-row inmate for post-conviction DNA testing under the Act "shall not be considered an application for a writ of habeas corpus under [28 U.S.C. § 2254] for purposes of determining whether it or any other application is a second or successive application under section 2254." S. 486 § 104(d), 147 Cong. Rec. at S2003; H.R. 912 § 104(d). But under the current rules, a successive petition in habeas corpus will not lie in Harvey's case.

However strong the evidence of Harvey's guilt may be, Virginia can reopen his case if it so chooses. But what is open to Virginia is presently foreclosed in federal court. Fashioning a new federal constitutional right that would govern all prisoners in all states is not a permissible way of addressing the question of post-conviction DNA testing. It is not merely that solutions which rely on the democratic process and on the experimental possibilities inherent in our federal system are practically superior. Those solutions alone are constitutionally sound.[3]

---

[3]The opinion of our concurring colleague likewise underscores the limitations of a § 1983 action by a state prisoner to secure evidence in federal courts. In Section II of that opinion, Judge King addresses and rejects a variety of theories under which a § 1983 action may lie. He dismisses *Brady v. Maryland*, 373 U.S. 83 (1963), *Bounds v. Smith*, 430 U.S. 817 (1977), and *Mathews v. Eldridge*, 424 U.S. 319 (1976), as bases for bringing a § 1983 action of this type. We appreciate our colleague's thoughtful analysis of these cases and the insights he has provided with respect to them. As to *Arizona v. Youngblood*, 488 U.S. 51 (1988), there has, as our concurring colleague recognizes, never been any suggestion that the Commonwealth has concealed, destroyed, or otherwise manipulated potentially exculpatory evidence in this case. Further, neither *Arizona v. Youngblood* nor *Jean v. Collins*, 221 F.3d 656 (4th Cir. 2000), involved a § 1983 suit over evidence in a state conviction that had yet to be invalidated.

After oral argument in this case, Harvey's counsel submitted to the panel a copy of Appellee's Motion For Scientific Analysis of Previously Untested Scientific Evidence, which was filed in the Fairfax Circuit Court pursuant to Va. Code § 19.2-327.1. The filing of this motion reinforces our view that the state courts are the proper forum for the resolution of this controversy and why this federal suit must be dismissed.

### III.

For the foregoing reasons, we reverse the judgment of the district court and remand the case with directions to dismiss it.

*REVERSED AND REMANDED*

KING, Circuit Judge, concurring in part and concurring in the judgment:

The issue of how or whether our criminal justice system should utilize technological and scientific improvements in the post-conviction context implicates the balancing of finality — a necessity in our judicial process — with our hallmark commitment to fair and impartial justice. I find myself in agreement with Chief Judge Wilkinson and the panel majority that, except for the broad parameters mandated by the Due Process Clause, such issues are more properly resolved by the legislative process. I also agree that the district court erred in concluding that Harvey's denial of post-conviction access to the biological evidence relating to his rape conviction contravened the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963), and that Harvey's due process rights were violated by the conduct of the Commonwealth's Attorney.

I part company, however, with the majority's conclusion that Harvey's complaint must be construed as a petition for habeas corpus. To the contrary, under the Supreme Court's mandate in *Heck v. Humphrey*, 512 U.S. 477 (1994), his complaint should be analyzed as it is framed, that is, as a civil action initiated under 42 U.S.C. § 1983. Thus, the failing of this proceeding is not that it represents a successive petition for habeas corpus on a claim previously adjudicated, but that Harvey is unable to demonstrate that a state actor somehow deprived him of a federally protected right. Therefore, although I agree with our good Chief Judge that the award of relief to Harvey should be reversed, I write separately to explain my rationale.

### I.

The proper approach to analyzing Harvey's claim is to first determine whether it is cognizable under § 1983 or whether, in the alterna-

tive, it may only be brought in habeas corpus. If that determination is made in favor of § 1983, we must then decide whether Harvey has sufficiently alleged and demonstrated the requirements of a § 1983 action. Having undertaken this analysis, I view Harvey's complaint as cognizable under § 1983, but I conclude that he has failed to demonstrate that any of his federally protected rights were violated.

The majority, relying on *Heck v. Humphrey*, has decided that Harvey fails to state a claim under § 1983, and that his action is only cognizable, if at all, as a petition for habeas corpus. It observes that proceedings which, if successful, would necessarily imply the invalidity of a defendant's conviction or sentence must be brought, pursuant to *Heck*, in habeas corpus. *Ante* at 5. The majority therefore concludes that, because Harvey seeks access to the biological evidence to challenge his underlying rape conviction, his claim is not cognizable under § 1983. *Ante* at 6.

Although the relevant inquiry is whether a § 1983 proceeding explicitly or implicitly attacks the fact or length of a prisoner's confinement, the *Heck* decision does not compel the majority's conclusion. In *Heck*, the Court affirmed the principle that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481. In furtherance of this principle, the Court held that, in any § 1983 action in which a state prisoner seeks damages, "the district court must consider whether a judgment in favor of the plaintiff would *necessarily imply* the invalidity of his conviction or sentence." *Id.* at 487 (emphasis added).[1] If such a necessary implication exists, then the complaint, according to Justice Scalia's opinion for the Court, "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been

---

[1]As the majority observes, *Heck* only dealt with a § 1983 suit for damages. *Ante* at 6. There is no reason, however, to believe that the principles of *Heck* are so limited, and I agree with the majority that the *Heck* rationale is also applicable to § 1983 proceedings by a prisoner seeking injunctive relief that would necessarily imply the invalidity of his conviction or sentence. *Ante* at 6. *See also Edwards v. Balisok*, 520 U.S. 641, 648-49 (1997) (leaving question unresolved).

invalidated." *Id.* By the same token, Justice Scalia observed that "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.*

In this proceeding, Harvey seeks access to the biological evidence held by the Commonwealth's Attorney, and his suit, if successful, would merely result in the Commonwealth's Attorney making the evidence available to him.[2] That act alone — providing Harvey with access to the biological evidence relating to his rape conviction — does not, in the words of Justice Scalia, "necessarily imply" the invalidity of Harvey's conviction or sentence. *Id.* at 487.[3] Although Harvey might use the evidence, at some future date, to initiate a separate action challenging his conviction, future exculpation is not a necessary implication of Harvey's claim in this case. Indeed, Harvey's capable counsel acknowledged at oral argument that state-of-the-art DNA testing often inculpates rather than exculpates, and at other times it simply is inconclusive.[4] Thus, it is also possible — and the

---

[2]The specific relief requested by Harvey in his complaint is:

> Equitable relief, in the form of the search for and release of all biological evidence, including the rape kit and reference samples of [Harvey's co-defendant] Steve Lawrence as well as the panty hose and the maroon shirt collected in connection with the rape for which [Harvey] was convicted . . . .

Complaint at ¶ A.

[3]Examining conventional dictionary definitions clarifies the stringent nature of the *Heck* test. "Necessarily" means "of necessity" or "inevitably"; thus, a successful lawsuit by Harvey will "necessarily imply" the invalidity of his conviction only if it "inevitably" mandates such a conclusion. *See Webster's II New College Dictionary* 731 (Houghton Mifflin Co. 1995). Put simply, if there is any conceivable way in which Harvey can succeed in this lawsuit and not impair the validity of his conviction, then a successful prosecution of Harvey's claim does not "necessarily imply" the invalidity of his conviction.

[4]This point, i.e., that STR DNA testing of biological evidence does not always result in future exculpation, is amply demonstrated by results obtained pursuant to the new Virginia statute, cited approvingly by the

Commonwealth would say likely — that such testing will provide more conclusive evidence of Harvey's guilt. Put simply, we do not know whether providing Harvey with access to the evidence would assist or hinder his attempts at exculpation; therefore, his civil action requesting access to the biological evidence does not "necessarily imply" the invalidity of his conviction.

Our good Chief Judge, writing for the majority, maintains that, because Harvey is seeking access to the biological evidence in order to challenge his confinement, his complaint must in fact be considered as an effort to seek habeas corpus relief. *Ante* at 6. A prisoner's underlying rationale, however, for bringing his § 1983 suit is not relevant under *Heck*. The applicable standard is an objective one, and the only relevant question is whether the prisoner's legal proceeding, if successful, would "*necessarily imply* the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487 (emphasis added). Therefore, even assuming Harvey's lawsuit is part of a long-term strategy to vacate his conviction, that fact has no bearing on whether his proceeding is cognizable under § 1983, or whether it may only be brought in habeas corpus. The issue, rather, is simply whether the claim made by Harvey would "necessarily imply" that his conviction should be reversed. In this situation, that is plainly not the case, and Harvey may therefore properly proceed under § 1983.

## II.

Having concluded that Harvey's claim is cognizable under § 1983, I must address whether it passes muster as such an action. Under § 1983, a plaintiff must demonstrate the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" by a state actor. It is indisputable that the Commonwealth's Attorney is a state

majority, that provides prisoners post-conviction access to DNA testing. *See* Va. Code Ann. §§ 19.2-327.1 to -327.6 (Michie Supp. 2001). Reportedly, the first post-conviction DNA testing accomplished under the statute, performed for a prisoner serving 42 years for rape, was inconclusive, and it failed to assist the prisoner in establishing his innocence. Brooke A. Masters, *DNA Test Fails to Vindicate Virginia Inmate*, Wash. Post, November 28, 2001, at B08.

actor within the meaning of § 1983; therefore, in order for Harvey to prevail, he must demonstrate that his denial of access to the biological evidence relating to his rape conviction deprived him of a federally protected right. Harvey seeks to satisfy this requirement by contending that the denial of access constitutes a violation of his rights under the Due Process Clause of the Fourteenth Amendment.[5]

## A.

Before addressing the merits of Harvey's allegation that his due process rights have been violated, we must determine whether his § 1983 action is time-barred. The statute of limitations for § 1983 proceedings is borrowed from a state's general personal injury statute of limitations. *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999). In Virginia, the applicable limitations period is two years from the time the cause of action accrues. Va. Code Ann. § 8.01-243(A) (Michie 2000). The determination of when a cause of action accrues, however, is a federal question and, under federal law, a cause of action accrues when "the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Jersey Heights*, 174 F.3d at 187 (quoting *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc)).

---

[5]In his complaint, Harvey also alleged violations of his Sixth Amendment rights under the Compulsory Process Clause and the Confrontation Clause and his Eighth Amendment rights under the Cruel and Unusual Punishment Clause. The district court, however, in denying the Commonwealth's Attorney's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), implicitly found these claims to be without merit. The Commonwealth's Attorney moved to dismiss Harvey's claim pursuant to Rule 12(b)(6), asserting that Harvey had failed to allege a deprivation of a federally protected right. The district court denied that motion solely on the ground that Harvey's allegation that he had been denied access to the biological evidence "states a claim of denial of due process." *Harvey v. Horan*, 119 F. Supp. 2d 581, 584 (E.D. Va. 2000). The district court therefore implicitly determined that Harvey failed to state a claim with respect to his other allegations of constitutional deprivation. Harvey has not appealed that ruling, and we need not further address his alternative theories.

We must therefore examine the allegations and the record to assess when Harvey suffered the alleged deprivation of his due process rights, and when Harvey possessed sufficient facts about such deprivation that reasonable inquiry would have revealed his cause of action. Harvey asserts multiple theories for how his denial of access to the biological evidence relating to his rape conviction violated due process. Under several of those theories, he contends that due process requires that he have access to the biological evidence, and, as such, the relevant constitutional harm occurred when Harvey was first denied access by the Commonwealth's Attorney.

If the mere denial of access is the relevant constitutional harm, then Harvey's § 1983 claim is likely time-barred. The record reveals that Harvey first began seeking the biological evidence from the Commonwealth's Attorney between November 1996 and February 1998, and he asserts in his complaint that he was "repeatedly unsuccessful" in his efforts to obtain access prior to making a formal request in February 1998. Complaint at ¶ 34. Harvey also alleged that he had never received a response to his February 1998 request. *Id.* Therefore, according to Harvey, by the middle of 1998, he had been pursuing access to the biological evidence for well over a year, and he had received no access to the evidence and had met with uncooperative silence from the Commonwealth's Attorney. If, standing alone, the denial of access to evidence violates due process, then it is likely that, by the middle of 1998, (1) a "constructive" denial had occurred, and (2) Harvey possessed sufficient facts to know that his rights were being violated. Yet Harvey failed to initiate this § 1983 proceeding until July 7, 2000, well over three years after he began seeking the evidence and more than two years after he failed to receive a response to his formal request to the Commonwealth's Attorney for access. Thus, if the mere denial of access by the Commonwealth's Attorney is sufficient to violate Harvey's due process rights, then Harvey's § 1983 suit is probably time-barred.

For one of Harvey's theories of due process violations, however, the relevant harm is a denial of access to the biological evidence in bad faith, i.e., with the purpose and effect of frustrating Harvey's exercise of his constitutional rights. Under that theory, before Harvey's cause of action under § 1983 would accrue, he would need to possess sufficient facts to trigger a reasonable inquiry into whether

the denial had been in bad faith. It is unclear from this record whether, assuming that the Commonwealth's Attorney denied Harvey's request in bad faith, Harvey possessed sufficient information by July 7, 1998, for his cause of action to accrue. Given that ambiguity, and given the sparseness of the record generally with respect to Harvey's knowledge of the status of his requests for access, his § 1983 claim cannot be disposed of solely on limitations grounds. I therefore turn to the merits of Harvey's § 1983 proceeding.

B.

In contending that he had been deprived of his due process rights, Harvey offered multiple theories on how the Commonwealth's Attorney's denial of access violated due process. Specifically, Harvey asserted that the denial of access violated the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), and interfered with his right of meaningful access to the court system. In addition, he contended in a more general fashion that the denial of access contravened the requirements of *Arizona v. Youngblood*, 488 U.S. 51 (1988), and that it abridged substantive due process. Although the district court granted summary judgment in Harvey's favor solely on the basis of his *Brady* claim, this Court has "consistently recognized that, even [if] we disagree with the reasoning of the district court, we may affirm the result on different grounds if fully supported by the record." *Brewster of Lynchburg, Inc. v. Dial Corp.*, 33 F.3d 355, 361 n.3 (4th Cir. 1994). Therefore, I will address each of these theories in turn.

1.

The district court identified and found a due process deprivation under *Brady v. Maryland*, 373 U.S. 83 (1963). *Harvey v. Horan*, No. Civ.A. 00-1123-A, 2001 WL 419142 at *5 (E.D. Va. Apr. 16, 2001) ("The court finds that, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), the plaintiff has a due process right of access to the DNA evidence and to conduct DNA testing upon the biological evidence, as such evidence could constitute material exculpatory evidence."). On this point, I agree with Judge Wilkinson: Harvey's denial of access to the biological evidence after his conviction and sentencing, standing alone, fails to contravene *Brady*. *Ante* at 11. As the majority points out, there is no allegation that Harvey did not receive a fair trial

in the courts of Virginia in 1990. *Id.* There is also no contention that the Commonwealth denied Harvey access to *Brady* material during his prosecution. As such, the *Brady* rule has no application to Harvey's claim in this case.[6]

2.

Given that the *Brady* rule is not applicable, I next evaluate Harvey's contention that his denial of access to the biological evidence relating to his rape conviction violates his right of access to the courts. Harvey asserts that the denial of access by the Commonwealth's Attorney prevented him from bringing future actions to challenge his conviction, such as a clemency application or another petition for habeas corpus relief, and thereby blocked him from obtaining any relief in the court system; therefore, Harvey maintains that the denial of access contravened his constitutional right of access to the court system under the Due Process Clause.

It is well established that due process requires government officials to permit prisoners "adequate, effective, and meaningful" access to the court system to litigate post-conviction legal issues, such as habeas corpus and civil rights actions. *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *see also Wolff v. McDonnell*, 418 U.S. 539, 579 (1974); *Johnson v. Avery*, 393 U.S. 483, 485-86 (1969). As such, the government must ensure that prisoners have the substantive ability to take advantage of post-conviction legal options, i.e., the ability to file the requisite legal papers is insufficient. The Court has also observed, however, that a state has no affirmative duty to "enable the prisoner to *discover* grievances, and to *litigate effectively* once in court." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). Thus, although a state must provide prisoners with meaningful access to the legal system, it is not obligated to maximize the prisoner's chances of prevailing in his post-conviction action.

---

[6]Moreover, under the second prong of the *Brady* rule, the prosecution is only required to disclose evidence that is favorable to the defendant. *Brady*, 373 U.S. at 87. It is not now known whether the biological evidence being sought by Harvey would be favorable or unfavorable to him. As such, even if Harvey had been denied access to the evidence during his trial, the *Brady* rule would not have applied.

Under *Lewis*, the mere fact that the Commonwealth's Attorney denied Harvey access to the biological evidence is insufficient to abridge Harvey's right of access to the courts. Even without access to the evidence, Harvey is fully capable of taking advantage of post-conviction legal options such as habeas corpus and clemency. He has made no allegation that he lacks an adequate library or other legal resources such that he is unable to effectively initiate a post-conviction proceeding. Harvey's contention is essentially that he needs access to the biological evidence to increase his chance of success in any future clemency application or habeas corpus proceeding he might initiate; however, under *Lewis*, the Commonwealth's Attorney has no obligation to help Harvey bolster any such future legal efforts. *Id.* at 354. Thus, the Commonwealth's Attorney's denial of access to Harvey did not infringe upon Harvey's constitutional right of access to the court system.

3.

Harvey also generally contends that his denial of access to the biological evidence violated due process because it contravened the requirements of *Arizona v. Youngblood*, 488 U.S. 51 (1988). The Supreme Court held in *Youngblood* that the prosecution violates the Due Process Clause if it fails to preserve potentially exculpatory evidence in bad faith, even though such material is outside the scope of *Brady v. Maryland*. *Id.* at 58. Harvey contends that "under *Youngblood*, blocking access to existing evidence whose potential exculpatory value is self-evident is no different than, in bad faith, destroying it," and therefore the denial of access violated his due process rights. Appellee's Br. at 9.

As an initial matter, *Youngblood*, like *Brady*, addresses the prosecution's constitutional duty prior to conviction, and thus fundamentally concerns a criminal defendant's due process right to a fair trial. Harvey's reliance on *Youngblood*, however, is not entirely misplaced, because *Youngblood* also implicates a broader due process concern. Government agents should not actively impede an attempt to exercise a constitutional right in bad faith, i.e., with the intended purpose of preventing an individual from exercising the right. In fact, Judge Wilkinson explained this point with clarity in his opinion in *Jean v. Collins*, 221 F.3d 656 (4th Cir. 2000).

> Of course the bad faith manipulation of evidence on the part of the police cannot be countenanced. Constitutional absolution for the concealment, doctoring, or destruction of evidence would fail to protect the innocent, fail to assist the apprehension of the guilty, and fail to safeguard the judicial process as one ultimately committed to the ascertainment of truth.

*Id.* at 663. In essence, the concept of due process requires that the government treat its citizens in an evenhanded and neutral manner; thus the targeting of specific individuals with the purpose of frustrating the exercise of their lawful rights contradicts the basic premise of the constitutional guarantee.

Thus, given that prisoners possess a right of effective access to the court system, a governmental decision to deny access to evidence with the intent — and with the effect — of preventing a prisoner from exercising his right of effective access to the court system would violate due process. *Cf. Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997) (concluding that police cover-up of evidence which prevented plaintiff from filing § 1983 suit against government officials violated plaintiff's constitutional right of access to court system); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984) (holding that constitutional right of access is violated when police deny plaintiffs information necessary for them to seek redress). To permit a state official to target a particular prisoner and to deliberately frustrate that prisoner's ability to take advantage of post-conviction legal options contravenes the essence of fair and impartial procedural justice.

Therefore, in order for Harvey to prevail on his § 1983 claim, he must demonstrate that the Commonwealth's Attorney denied him access to the biological evidence in bad faith, i.e., it deliberately blocked his access to the evidence in order to impede his ability to take advantage of available post-conviction legal procedures. In the circumstances presented, Harvey cannot prevail on this claim. He has made no allegation of bad faith on the part of the Commonwealth or its representatives, and he has presented no evidence of any bad faith. As such, Harvey has failed to demonstrate that the Commonwealth's Attorney's conduct violated his due process rights.

4.

Finally, Harvey contends that the conduct of the Commonwealth's Attorney violated his due process rights because the denial of access to the biological evidence contravened substantive due process. As the majority observes, Harvey indicated at oral argument that this Court should employ the three-part balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976), to craft a due process right of access to biological evidence for the purpose of DNA testing. *Ante* at 9. Harvey asserts that, given a prisoner's substantial interest in proving his innocence and the minor administrative burden to the state in providing access, we should find such a due process right.

Harvey's reliance on *Mathews* is misplaced. The Court in *Mathews* promulgated the three-part test as a means of evaluating the constitutional adequacy of administrative procedures used to deprive an individual of a "liberty" or "property" interest. *Mathews*, 424 U.S. at 331-35. Justice Powell, writing for the Court, observed that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Id.* at 331. He also noted, however, that "'[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances," and he consequently recognized that different administrative proceedings could use very different procedures and nonetheless be constitutionally sufficient. *Id.* at 334 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). Justice Powell therefore established the three-part test as a procedure for analyzing whether a governmental decision-making process complied with constitutional constraints. *Id.* at 334-35.

Thus the balancing test of *Mathews* is only relevant when the government is depriving an individual of a "liberty" or "property" interest. Harvey must therefore possess such an interest in accessing or possessing the biological evidence relating to his rape conviction before the principles of *Mathews* come into play. Harvey, however, has no such interest. He has no post-conviction legal right to access or discover the evidence relating to his rape conviction, and he cer-

tainly has no property interest in such evidence. As such, the *Mathews* test is not applicable to Harvey's situation.[7]

### C.

Harvey therefore is unable to demonstrate that the Commonwealth's Attorney's denial of access, under any of his theories, violated his due process rights. As such, Harvey has failed to demonstrate that his federally protected rights were violated, and his § 1983 proceeding must fail.

### III.

Our criminal justice system is not infallible, and it has occasionally convicted an innocent person. Although technological and scientific advances may well enable our legal system to make more precise judgments of guilt or innocence, the blanket application of such developments to previously concluded proceedings raises difficult questions concerning finality. An appropriate balance must therefore be struck between accuracy and finality, and the integrity and efficiency of our judicial system must be preserved.

Regardless of where I would strike such a balance, it is not, as I have stated, our role to decide the issue here. Our task is to ensure that the Commonwealth's Attorney has not, in this case, violated Harvey's federally protected rights — and he has not done so.

---

[7]As for Harvey's more general contention that denying him access to the biological evidence violates substantive due process, it may be that the significant interest of our constitutional system in ensuring justice requires, under the Due Process Clause, that prisoners enjoy access to evidence for the purpose of DNA testing. That, however, in my view, is not an issue within our bailiwick; if any such right exists, it must be recognized by judges of a higher pay grade than those of this Court.